# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIANA RAE HARRIS, on behalf of herself and all persons similarly situated, | No. 4:22-CV-00111 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| REBELZ CLUB, LLC d/b/a Rebelz Gentlemen's Club, HEATHER VARANDO, and PABLO VARANDO, | |
| Defendants. | |

## MEMORANDUM OPINION

### JULY 15, 2022

A former exotic dancer at the Rebelz Gentlemen's Club in Moshannon, Pennsylvania, Plaintiff Briana Rae Harris brought this putative class action lawsuit against Rebelz and its owners for allegedly withholding dancer pay in violation of federal and state law. The Defendants now move to dismiss the Complaint, challenging the classification of, and the dancer's entitlement to, the disputed compensation, as well as the claims of individual liability against the Rebelz owners. But the Defendants misconstrue both Harris's claims and the relevant legal authority. Because the Complaint states valid causes of action under the Fair Labor Standards Act and the Pennsylvania Wage Payment and Collection Law, as well as for common law conversion, the Defendants' motion to dismiss is denied.

## I.      BACKGROUND

In March 2021, Harris began working as an exotic dancer at the Rebelz Gentlemen's Club located in Moshannon, Pennsylvania.[1] At the time, Rebelz was owned and operated by a husband-and-wife duo, Pablo and Heather Varando.[2] Mr. and Mrs. Varando oversaw all aspects of the Rebelz operation: they hired, fired, supervised, directed the work of, and controlled payroll decisions for the exotic dancers.[3] In particular, Mrs. Varando—the club's "House Mom"—exercised control over the dancers' work schedules, setting the shift requirements and permitting days off only with her express permission.[4]

At any given time, Rebelz employed approximately fourteen dancers, who worked two days per week (Fridays and Saturdays) from 8:30 p.m. until at least 6:00 a.m.[5] The dancers received two forms of compensation: a portion of the customer "dance fees" (i.e., the amount customers paid per lap dance) as well as customer tips.[6] The Defendants unilaterally set the dance fees—$20 for a four-minute dance, $80 for a sixteen-minute dance—and the portion of the dance fees attributed to dancers—50 percent.[7] Further, the Defendants deducted from the

---

[1]   Doc. 1 ¶¶ 14–15.
[2]   *Id*. ¶¶ 30, 35. The Defendants notified the Court that Mr. Varando unexpectedly passed away on April 20, 2022. Doc. 21.
[3]   Doc. 1 ¶¶ 31–34, 36–39.
[4]   *Id*. ¶¶ 20–21.
[5]   *Id*. ¶¶ 16, 20.
[6]   *Id*. ¶¶ 22, 73.
[7]   *Id*. ¶ 22.

dancers' tips and dance fees payments for certain house expenses, including "House Fees" (a 15% charge from tips for the privilege of working on a given night), "Expenses" (to cover advertising costs and other club expenses), "Tip-Outs" (to subsidize the cost for other employees, such as security staff and DJs), and "Late Fees."[8] The Defendants also imposed dancer-specific deductions for either failing to perform 80 minutes of customer dances or making more than $300 a night.[9]

Harris stopped working at Rebelz in September 2021.[10] Around four months later, in January 2022, she initiated this putative class action on behalf of all current and former dancers at Rebelz during the prior three years.[11] In the three-count lawsuit against Rebelz and Mr. and Mrs. Varando, Harris alleged violations of the Fair Labor Standards Act ("FLSA") and the Pennsylvania Wage Payment and Collection Law ("WPCL") as well as a common law claim for conversion based on the Defendants' mandatory deductions of dancer wages and tips.[12] The Defendants moved to dismiss the Complaint on February 15, 2022.[13] That motion has been fully briefed and is now ripe for disposition.[14]

---

[8]  *Id*. ¶ 23.

[9]  *Id*.

[10]  *Id*. ¶ 15.

[11]  *Id*. ¶¶ 10–11.

[12]  Doc. 1 ¶¶ 61–70 (Count I – FLSA), 71–79 (Count II – WPCL), 80–84 (Count III – Conversion).

[13]  Doc. 5. The Defendants characterize this as a "Motion for Partial Dismissal," seeking only "an order dismissing count two of Plaintiff's Complaint, striking all references to 'dance fees,' dismissing from the Complaint Mr. and Mrs. Varando in their individual capacities, and striking paragraph sixty-eight from the Complaint." *Id*.

[14]  Doc. 6; Doc. 11; Doc. 17.

3

## II.    LAW

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[15] and *Ashcroft v. Iqbal*,[16] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[17] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[18]

## III.    ANALYSIS

### A.    Count I – Violation of the FLSA

The FLSA provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep

---

[15]   550 U.S. 544 (2007).
[16]   556 U.S. 662 (2009).
[17]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[18]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

any portion of employees' tips, regardless of whether or not the employer takes a tip credit."[19] Accordingly, in Count I of her Complaint, Harris argues that the Defendants violated the FLSA by "knowingly deduct[ing] amounts from [her] and the [other Rebelz dancers'] tips" for the purpose of "subsidizing [the] labor costs for other employees (e.g., security staff and DJs)."[20] In their motion to dismiss, the Defendants attack Harris's FLSA claim on two grounds: (1) the dance fees do not qualify as "tips," and therefore any alleged withholding of dance fees does not violate the FLSA; and (2) Harris's allegations regarding Mrs. Varando lack the specificity required to sustain a claim for individual liability.[21] Neither argument justifies dismissal.

### 1.    Dance Fees

First, the Defendants argue that although the FLSA prohibits employers from withholding and converting "tips" employees receive, "the dance fees at Rebelz are not tips."[22] But on this, the Defendants misunderstand the nature of Harris's Complaint. As Harris explains, she does not "allege that any portion of the [d]ance [f]ees were actionable under the FLSA at Count I"; rather, for Count I, Harris seeks only "the improperly reduced tips"—that is, "those amounts paid

---

[19]   29 U.S.C. § 203(m)(2)(B); *see also Secretary United States Department of Labor v. Bristol Excavating, Inc.*, 935 F.3d 122, 136 n.11 (3d Cir. 2019) ("[T]ips are the property of the employee.").

[20]   Doc. 1 at 2, ¶ 67.

[21]   Doc. 6 at 7–11.

[22]   *Id.* at 8.

directly by customers to [Rebelz dancers] that [the] Defendants improperly withheld/deducted."[23] The dance fees are relevant only to Count II, which seeks compensation for lost "wages." Accordingly, the Defendants' argument that dance fees do not qualify as "tips" under the FLSA has no bearing on the viability of Count I.

### 2.    Individual Liability

The Defendants next argue that Count I as to Mrs. Varando should be dismissed because "[o]ther than bald assertions that [she is an] 'employer[]' under the FLSA," the Complaint offers "no facts" showing that she exercised supervisory authority over Harris or the other Rebelz dancers.[24] But that's simply not true.

It is well established that "[a]side from the corporate entity itself, a company's owners, officers, or supervisory personnel may also constitute 'joint employers' for purposes of liability under the FLSA."[25] An individual is subject to FLSA liability "when he or she exercises supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation while acting in the employer's interest"—a fact determined by "the totality of the circumstances rather than [the] technical concepts of the employment relationship."[26] At the pleadings phase, an FLSA claim avoids dismissal so long as

---

[23]   Doc. 11 at 19.
[24]   Doc. 6 at 11.
[25]   *Thompson v. Real Estate Mortgage Network*, 748 F.3d 142, 153 (3d Cir. 2014).
[26]   *Id*. at 153–54 (internal quotation marks and citations omitted).

the complaint "provides enough information" about "the scope of the individual defendants' workplace authority" to "allow the court to draw the reasonable inference that the defendants are liable for the misconduct alleged."[27]

Here, Harris alleges that Mrs. Varando "was a principal of, and owned an interest in, Rebelz," and that she "directed the work of" and "had the power to, and did, hire, fire and discipline [the dancers at Rebelz]."[28] Further, the Complaint provides that Mrs. Varando "exercised discretionary control over payroll decisions with respect to [Harris] and [the other] Dancers,"[29] a fact Harris substantiates with a more detailed allegation about the way in which Mrs. Varando exercised supervisory authority regarding the alleged tip deductions at issue in Count I:

> On multiple occasions, [d]ancers complained to [Mrs.] Varando that they had been shorted tips and suffered from illegal deductions from their tips. In response, [Mrs. Varando] either ignored the complaints or took disciplinary action against [the] Dancers who raised these complaints, by reducing their work shifts or firing them.[30]

These allegations, taken together, "provide[] enough information" about the scope of Mrs. Varando's workplace authority to allow the Court to reasonably infer her

---

[27]   *Id.* at 154 (citing *Iqbal*, 556 U.S. at 678) (brackets omitted).
[28]   Doc. 1 ¶¶ 30–32; *see also id.* ¶ 21 ("If a Dancer did not want to work on a given night, they needed to request permission to have off from the 'House Mom,' Heather Varando.").
[29]   *Id.* ¶ 34.
[30]   *Id.* ¶ 41.

liability for the misconduct alleged.[31] As such, the Defendants' motion to dismiss Harris's FMLA claim as to Mrs. Varando is denied.[32]

### B.    Count II – Violation of the WPCL

In Count II, Harris alleges that the Defendants violated the WPCL by deducting and converting for their own benefit a portion of the dancers' wages, which Harris defines as customer tips as well as the 50% of dance fees allocated to dancers.[33] The Defendants argue that the WPCL claim should be dismissed for three reasons: (1) Harris does not allege that she had a "contractual entitlement" to compensation from Rebelz; (2) dance fees do not qualify as "wages" under the WPCL; and (3) the Complaint fails to establish individual liability for Mrs. Varando.[34] Again, the Court finds the Defendants wrong on all fronts.

### 1.    "Contractual Entitlement" to Wages

The WPCL "provides employees a statutory remedy to recover wages and other benefits that are contractually due to them."[35] Properly understood, the WPCL "does not create a right to compensation"; the law simply "provides a

---

[31]  *Thompson*, 748 F.3d at 154.

[32]  Separately, the Defendants ask the Court to strike the allegations under Count I regarding recordkeeping deficiencies. Doc. 6 at 13–14 (citing Doc. 1 ¶ 68). But as Harris explains, these allegations are relevant to her "monetary claims for converted tips and wages," as "these failures [may] shift the burden on to [the] Defendants to rebut [her] prima facie showing that [the] Dancers' tips were illegally converted." Doc. 11 at 23 (citing *Reich v. Gateway Press*, 13 F.3d 685, 701 (3d Cir. 1994); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1297–98 (3d Cir. 1991)). The Defendants' request to strike these allegations is denied.

[33]  Doc. 1 ¶¶ 72–73, 75.

[34]  Doc. 6 at 6–12.

[35]  *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 953 (Pa. Super. 2011) (citing *Oberneder v. Link Computer Corp.*, 696 A.2d 148, 150 (Pa. 1997)).

statutory remedy when the employer breaches a contractual obligation to pay earned wages."[36] To present a WPCL claim, a plaintiff "need not plead the existence of any formal employment contract."[37] Instead, "the plaintiff need only plead the existence of some contractual agreement to pay wages that [the] defendant now owes to the plaintiff."[38] That contractual agreement can be either express or implied.[39] And in this context, "a promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service."[40]

---

[36]  *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

[37]  *Eueda v. Millwood, Inc.*, 2013 WL 4520468, at *4 (M.D. Pa. Aug. 26, 2013) (Mannion, J.).

[38]  *Id.*; *see also Caddick v. Tasty Baking Co.*, 2019 WL 10943308, at *1 (E.D. Pa. Dec. 18, 2019) (rejecting the defendant employer's argument that it "has no contractual obligation to pay earned wages" to the plaintiffs—workers the defendant classified as independent contractors—and holding that the plaintiffs "stated a plausible claim that [the defendant] violated the WPCL" because the plaintiffs "allege that [the defendant] paid them for the services that they performed for [the defendant] by permitting them to keep the difference in the prices that they paid [the defendant] and the prices that retailers paid for [the defendant's] products"); *Ortiz v. Goya Foods, Inc.*, 2020 WL 5249354, at *5 (D.N.J. Sept. 3, 2020) (holding that plaintiffs, despite being classified as independent contractors, stated a wage-payment claim under the WPCL by alleging that the defendants "withheld various amounts from their respective sales commissions"), *partially reversed on reconsideration on other grounds*, 2020 WL 6363716 (D.N.J. Oct. 29, 2020).

[39]  *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003) ("Because Tyson's employees do not work under an employment contract or a collective bargaining agreement, plaintiffs will have to establish the formation of an implied oral contract between Tyson and its employees."); *Braun*, 24 A.3d at 954 ("[A]bsent a formal employment contract or collective bargaining agreement, an employee raising a WPCL claim would have to establish, at a minimum, an implied oral contract between the employee and employer.").

[40]  *Eueda*, 2013 WL 4520468 at *4 (citation omitted); *see also Oxner v. Cliveden Nursing & Rehabilitation Center P.A., L.P.*, 132 F. Supp. 3d 645, 649 (E.D. Pa. 2015) ("A promise to pay for services can only be implied, however, in circumstances under which the party rendering the services would be justified in entertaining a reasonable expectation of being compensated by the party receiving the benefit of those services.").

Here, Harris alleges that although Rebelz "uniformly classified [its] Dancers as independent contractors," she and the dancers "were in reality employees of [Rebelz]."[41] The Defendants do not dispute this.[42] Instead, they assert that Harris "makes no allegations regarding any contractual entitlement to any compensation from Rebelz."[43] The Defendants emphasize that "the relevant pleading [in Harris's Complaint] does not even contain the words 'contract' or 'agreement,'" and that the "arrangement" between Rebelz and its dancers was for Rebelz "to retain a portion of tips [and dance fees]."[44] According to the Defendants, Harris therefore fails to state a claim under the WPCL because the Complaint contains "no allegations that Rebelz ever agreed to pay the deducted amounts."[45] But on this, the Defendants misstate (or misunderstand) the law.

First, Harris alleges that she and her fellow dancers agreed to perform at Rebelz in exchange for 50% of the dance fees as well as customer tips.[46] Although Harris does not plead that this work arrangement and compensation structure was

---

[41]  Doc. 1 ¶ 19; *see also id*. ¶¶ 20 (alleging that Rebelz controlled the dancers' work schedules, set their work hours, and restricted their conduct during the work periods), 22 (alleging that Rebelz controlled access to the dancers' customer base and set the dancers' compensation), 25 (alleging that dancers enjoyed no opportunity for profit or loss based on managerial skill), 26 (alleging that Rebelz provided the venue and all relevant "equipment" for the work), 27 (alleging that the dancers' work did not require a special skill), 28 (alleging that the working arrangement was a permanent relationship, as dancers were prohibited from working at other exotic dance clubs), 29 (alleging that the work the dancers performed was central to the Defendants' business).

[42]  *See* Doc. 6 at 6–7; Doc. 17 at 1–4.

[43]  Doc. 6 at 7.

[44]  Doc. 17 at 3–4.

[45]  *Id*. at 3.

[46]  Doc. 1 ¶ 73.

detailed in a formal employment contract, that is of no consequence.[47] The alleged

employer-employee relationship—whereby the dancers perform a service for

Rebelz in exchange for set compensation—establishes an express contractual

agreement between the dancers and Rebelz.[48] But even if one questions whether

the Complaint details the elements of an express contract, at a minimum, Harris

alleges the existence of an implied contract: the dancers performed at Rebelz with

the Defendants' knowledge and consent—indeed, at the Defendants' direction and

for the Defendants' financial benefit.[49]

Second, Harris is not precluded from bringing a WPCL claim simply

because she and the other Rebelz dancers agreed to the wage deductions at issue.

On this, Harris directs the Court to *Ressler v. Jones Motor Co., Inc.*[50] and *Ortiz v.*

*Goya Foods, Inc.*[51] In both cases, the court considered the legality of certain wage

reductions and found the reductions actionable under the WPCL even though they

were implemented pursuant to a pay policy the employees agreed to.[52] The

---

[47] *Euceda*, 2013 WL 4520468, at *4.

[48] *Id*. at *5 (finding that plaintiff's allegations that "he was paid under a piece-rate wage scheme in which he was paid $.39 per pallet repaired" established "the existence of a contractual agreement by which the defendant became bound to pay wages for services rendered").

[49] *See id*. at *4.

[50] 487 A.2d 424 (Pa. Super. 1985).

[51] 2020 WL 5249354.

[52] *See Ressler*, 487 A.2d at 428–29 (holding that Jones Motor's plan "allow[ing] for deductions from its employees' wages" constitutes "the type of economic coercion which the [WPCL] addresses," even though "Jones Motor obtained written authorizations from its employees"); *Ortiz*, 2020 WL 5249354 at *4–5 (holding that the plaintiffs pleaded a viable WPCL claim even though the employment contract at issue "expressly authorize[d] the complained-of conduct, that is, the deductions and withholdings from gross commissions, and only entitles [the] Plaintiffs to payment once those adjustments have been made").

Defendants present no legal authority casting doubt on these holdings.[53] Accordingly, the Court considers both *Ressler* and *Ortiz* persuasive and concurs with their judgment that an employee's prior consent to the disputed deductions does not foreclose an otherwise viable WPCL claim.

## 2.   Dance Fees

The Defendants next argue that the dance fees do not qualify as "wages" under the WPCL: "No part of the WPCL suggests that 'wages' includes a kickback for something like a dance fee."[54] That argument cannot be squared with the text of the statute or the case law interpreting it.

The WPCL defines "wages" as "all earnings of an employee, regardless of whether determined on time, task, piece, commission or other method of calculation."[55] Federal and state courts interpreting this statute routinely remark on "the WPCL's broad definition of 'wages.'"[56] It is therefore unsurprising that courts have defined a wide array of monetary forms of compensation—including

---

[53] The Defendants cite *Mackereth v. Kooma*, 2015 WL 2337273 (E.D Pa. May 14, 2015), and *Rui Tong v. Henderson Kitchen, Inc.*, 2018 WL 4961622 (E.D. Pa. Oct. 12, 2018), but neither case proves instructive here. In both cases, the court concluded—without analysis—that the "[p]laintiffs do not allege the existence of a contractual right, either express or implied, to recover the wages they seek pursuant to the WPCL," *Mackereth*, 2015 WL 2337273 at *10; *see also Rui Tong*, 2018 WL 4961622 at *7 (same); neither court held that the absence of this "contractual right" was attributable to the employee's prior consent to the deductions at issue.

[54] Doc. 6 at 9.

[55] 43 Pa. Stat. § 260.2a (cleaned up).

[56] *Caddick*, 2019 WL 10943308, at *1; *see also Bowers v. NETI Technologies, Inc.*, 690 F. Supp. 349, 353 (E.D. Pa. 1988) (holding that "stock repurchase payments" were "certainly 'wages' within the broad definition of the WPCL in that they were payments pursuant to agreement, and they were offered to plaintiffs as employees, and not for some reason entirely unrelated to their employment"); *Todora v. Jones & Laughlin Steel Corp.*, 450 A.2d 647, 650 (Pa. Super. 1982) (noting "the extremely broad definition of the term 'wages' in the [WPCL]").

"separation, vacation and holiday pay, and bonuses" as well as "equity interests, put options, and call options" and "monetary payments for rest breaks"—as "wages" under the WPCL.[57] Indeed, monetary compensation fits within this definition so long as it is "offered to plaintiffs as employees, and not for some reason entirely unrelated to their employment."[58]

Here, Harris and the other Rebelz dancers received as compensation for their work 50% of the fees that customers paid Rebelz for each dance performed (as well as customer tips).[59] According to Harris, Rebelz then deducted from the dancers' portion of the dance fees money for "House Fees," "Expenses," "Tip-Outs," and "Late Fees," which were used to "subsidize [the] Defendants' labor costs for other employees such as security staff or DJs."[60] The 50% of dance fees allotted to the dancers (including the amount withheld for the various deductions) qualify as "wages" under the WPCL: Rebelz offered this payment to dancers in exchange for their work at and for Rebelz.[61]

---

[57]   *Braun*, 24 A.3d at 956.
[58]   *Id*. (citation omitted).
[59]   Doc. 1 ¶ 22.
[60]   *Id*. ¶ 23.
[61]   In their Reply brief, the Defendants ask the Court to strike from the Complaint any discussion of the dance fees. Doc. 17 at 6. The Court finds this request perplexing. According to the Defendants, "Harris apparently takes no issue with Rebelz' retention of the dance fees." *Id*. But that is categorically false. Harris explains that for purposes of Count I (FLSA), she "never alleged that the Dance Fees are [the] Dancers' 'tips'"—the dance fees are relevant, but only to Count II. Doc. 11 at 4 (emphasis omitted). Defendants (or, at least, defense counsel) should find this wholly unsurprising and understandable: the FLSA provision at issue here in Count I concerns only "tips," whereas the WPCL claim (i.e., Count II) concerns improper deductions from the broader category of "wages."

13

### 3.    Individual Liability

Lastly, the Defendants argue that Count II as to Mrs. Varando should be dismissed because the Complaint lacks the alleged facts needed to show individual liability.[62] But as with Count I, that is incorrect.

Under the WPCL, the term "employer" includes "any agent or officer" of a "firm, partnership, association, [or] corporation."[63] Courts read this language as "impos[ing] personal liability on high-ranking corporate officers for employees' unpaid wages."[64] To establish individual liability, a plaintiff need only allege that the defendant assumed "an active role in decision making"—that is, the plaintiff must show that the individual defendant was "actively involved in corporate policy-making, such as corporate decision-making or corporate advertisement on matters of pay or compensation."[65]

---

Further, Harris explains that she never alleged that "she is entitled to 100% of dance fees." *Id.* (emphasis omitted). Again, this should come as no surprise to the Defendants or their lawyers. Harris pleads that Rebelz offered its dancers 50% of dance fees as compensation, and then deducted from that 50% money for various house expenses. Doc. 1 ¶¶ 22–23. She does not claim that Rebelz cheated her out of lawful income by giving her only 50% of the dance fees; she argues only that the deductions taken from the 50% promised to dancers are improper. *Id.* Neither of these statements can be characterized as Harris disclaiming any entitlement to her portion of the dance fees. And neither of these statements is particularly complicated or confusing. Yet defense counsel—who notes that he is "well-versed in these matters and read the Complaint multiple times"—is apparently "confused." Doc. 17 at 6. The only thing confusing here is the Defendants' confusion. As the dance fees are at issue in Count II, the Court declines to strike all allegations about the dance fees from the Complaint.

[62]   Doc. 6 at 11–12.

[63]   43 Pa. Stat. § 260.2a.

[64]   *Walsh v. Alarm Security Group, Inc.*, 95 F. App'x 399, 402 (3d Cir. 2004).

[65]   *Pritchett v. Alternative Bearings Corp.*, 2020 WL 2847865, at *5 (M.D. Pa. June 2, 2020) (Rambo, J.) (citing *Mancini v. Concorde Group*, 2014 WL 10575398, at *10 (Pa. Super. Sept. 25, 2014)).

Here, Harris alleges that Mrs. Varando, the exotic dance club's "House Mom," exercised significant decision-making authority at Rebelz: she hired, fired, disciplined, and set the schedule and pay for the dancers.[66] Particularly relevant, Harris alleges that dancers went to Mrs. Varando with their concerns about the wage deductions at issue here and that Mrs. Varando personally "took disciplinary action against [the] Dancers who raised these complaints, by reducing their work shifts or firing them."[67] These allegations state a claim for Mrs. Varando's individual liability under the WPCL.

### C.    Count III – Conversion

As with Counts I and II, the Defendants move to dismiss Count III (conversion) against Mrs. Varando. According to the Defendants, "there is simply no viable allegation suggesting that . . . Mrs. Varando actively participated in the commission of any torts."[68] But, once again, the Defendants have it wrong.

Under Pennsylvania law, conversion is "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification."[69] Corporate officers can be held individually liable for conversion under the "participation theory"—that is, if the officer personally

---

[66]  Doc. 1 ¶¶ 21, 30–32.

[67]  *Id.* ¶ 41.

[68]  Doc. 6 at 13.

[69]  *Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. 1987) (citing *Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964)).

participated in the tortious acts.[70] A conversion action asserting individual liability "may exist even though the agent or officer derived no personal benefit, but acted on behalf, and in the name of, the corporation and the corporation alone was enriched by the act."[71]

The tortious conduct at issue here is the Defendants' alleged conversion of the dancer's tips without consent or legal justification.[72] Harris alleges that Mrs. Varando participated in this conduct by "exercis[ing] discretionary control over payroll decisions" with respect to Harris and the other dancers, and penalizing dancers who complained "they had been shorted tips and suffered from illegal deductions from their tips."[73] Taken together, these allegations state a conversion claim against Mrs. Varando under the participation theory.

## IV.   CONCLUSION

In their motion to dismiss, the Defendants seem wholly confused—about the nature of Harris's claims and the legal authorities that govern them. But as the Court sees it, the legal issues here are not particularly complicated. Harris's allegations that the Defendants claimed a portion of the dancers' tips support claims under the FLSA (Count I) and common law (Count III). And these allegations, coupled with the pleadings about dance fee deductions for house

---

[70]   *Id*. (citing *Wicks v. Milzoco Builders*, 470 A.2d 86, 90 (Pa. 1983)).

[71]   *Id*. (citing *McDonald v. First National Bank of McKeesport*, 44 A.2d 265, 266 (1945)).

[72]   Doc. 1 ¶¶ 81–83.

[73]   *Id*. ¶¶ 34, 41.

expenses, state a claim for relief under the WPCL (Count II). Accordingly, the

Defendants' motion to dismiss is denied.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge