## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIANA RAE HARRIS, on behalf of herself and all persons similarly situated, | No. 4:22-CV-00111 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| REBELZ CLUB, LLC d/b/a Rebelz Gentlemen's Club, HEATHER VARANDO, and PABLO VARANDO, | |
| Defendants. | |

### MEMORANDUM OPINION

### JULY 15, 2022

Former exotic dancer Briana Rae Harris, acting on behalf of all dancers at the Rebelz Gentlemen's Club in Moshannon, Pennsylvania from the past three years, filed this putative class action against Rebelz and its owners, alleging that the club unlawfully withheld dancer pay and tips. Now, Harris moves for conditional certification of her proposed class. Buttressed by declarations from other Rebelz dancers, Harris argues that the alleged unlawful withholdings were part of a common payment scheme imposed on all Rebelz dancers. Because these declarations constitute sufficient evidence to satisfy the modest factual showing required, Harris's motion for conditional certification is granted.

## I.    BACKGROUND

On January 20, 2022, Harris initiated this putative class action lawsuit against Rebelz and its owners, Pablo and Heather Varando, on behalf of all Rebelz dancers from the past three years.[1] Harris alleges violations of the Fair Labor Standards Act ("FLSA") and the Pennsylvania Wage Payment and Collection Law ("WPCL") as well as a common law claim for conversion based on the Defendants' mandatory deductions of dancer wages and tips.[2]

The following month, Harris filed a motion for conditional class certification.[3] In support, Harris attached three declarations: the first, by her;[4] the second and third, by two other Rebelz dancers, Caera Zimmerman and Vanessa Baker.[5] In their declarations, Harris, Zimmerman, and Baker detail the work requirements and payment scheme for exotic dancers at Rebelz. Specifically, Zimmerman explains that she was hired by Mrs. Varando to work two days per week as dancers, with each shift lasting at least 10 hours, totaling approximately 20

---

[1]    Doc. 1. The Defendants notified the Court that Mr. Varando unexpectedly passed away on April 20, 2022. Doc. 21.

[2]    Doc. 1 ¶¶ 61–70 (Count I – FLSA), 71–79 (Count II – WPCL), 80–84 (Count III – Conversion).

[3]    Doc. 7.

[4]    Doc. 7-4, Ex. 1 (Jan. 21, 2022 B. Harris Decl.).

[5]    Doc. 7-5, Ex. 2 (Jan. 27, 2022 C. Zimmerman Decl.); Doc. 7-6, Ex. 3 (Feb. 4, 2022 V. Baker Decl.).

hours a week.[6] Additionally, all three note that Rebelz did not permit dancers to work at other clubs while employed at Rebelz.[7]

According to Harris, Zimmerman, and Baker, dancers at Rebelz receive two forms of payment. First, dancers collect a portion of the "dance fees"—that is, the amount Rebelz customers pay per lap dance.[8] The dance fees are set by Rebelz without any input or negotiation by the dancers.[9] Per Rebelz policy, dancers receive 50% of dance fees; Rebelz retains the remaining 50%.[10] Second, dancers received customer tips, which were made at the customers' discretion (i.e., the additional gratuity was optional; Rebelz did not require or automatically apply customer tips).[11] Harris, Zimmerman, and Baker explain that "Rebelz required that

---

[6]   *See* Doc. 7-5, Ex. 2 (Jan. 27, 2022 C. Zimmerman Decl.) ¶¶ 2, 11. Although Harris and Baker do not state that Mrs. Varando hired them, they note that Mrs. Varando "often hires Dancers," and that as the "House Mom," Mrs. Varando "manages the club and supervise[s] the Dancers." Doc. 7-4, Ex. 1 (Jan. 21, 2022 B. Harris Decl.) ¶ 13; Doc. 7-6, Ex. 3 (Feb. 4, 2022 V. Baker Decl.) ¶ 12. Additionally, Harris and Baker affirm the weekly work schedule Zimmerman describes. Doc. 7-4, Ex. 1 (Jan. 21, 2022 B. Harris Decl.) ¶ 2; Doc. 7-6, Ex. 3 (Feb. 4, 2022 V. Baker Decl.) ¶ 2.

[7]   Doc. 7-4, Ex. 1 (Jan. 21, 2022 B. Harris Decl.) ¶ 11; Doc. 7-5, Ex. 2 (Jan. 27, 2022 C. Zimmerman Decl.) ¶ 10; Doc. 7-6, Ex. 3 (Feb. 4, 2022 V. Baker Decl.) ¶ 10.

[8]   Doc. 7-4, Ex. 1 (Jan. 21, 2022 B. Harris Decl.) ¶¶ 5–7; Doc. 7-5, Ex. 2 (Jan. 27, 2022 C. Zimmerman Decl.) ¶¶ 4–6; Doc. 7-6, Ex. 3 (Feb. 4, 2022 V. Baker Decl.) ¶¶ 4–6.

[9]   Doc. 7-4, Ex. 1 (Jan. 21, 2022 B. Harris Decl.) ¶ 6 ("For example, a 4-minute dance costs $20, a 16-minute dance costs $80 and a 64-minute dance costs $320. 'Bed Dances' (where the dance would occur on a bed) cost $150 for 20 minutes up to $370 for 64 minutes."); Doc. 7-5, Ex. 2 (Jan. 27, 2022 C. Zimmerman Decl.) ¶ 5 (same); Doc. 7-6, Ex. 3 (Feb. 4, 2022 V. Baker Decl.) ¶ 5 (same).

[10]   *Id*.

[11]   Doc. 7-4, Ex. 1 (Jan. 21, 2022 B. Harris Decl.) ¶ 8; Doc. 7-5, Ex. 2 (Jan. 27, 2022 C. Zimmerman Decl.) ¶ 7; Doc. 7-6, Ex. 3 (Feb. 4, 2022 V. Baker Decl.) ¶ 7.

after each dance, Dancers place any cash tips in a dedicated envelope for each

Dancer, and provide it to the club's management in the office."[12]

Lastly, Harris, Zimmerman, and Baker detail a set of "mandatory fees" that

were "automatically deducted from the Dancers' tips and share of Dance Fees each

working night":

> (1) a "House Fee" per night worked (which was usually
> 15% of tips earned, but could vary at the whim of
> management); (2) a "Tip-Out Fee" of $5.00 per non-
> Dancer staff member to be paid by each Dancer to pay
> for Rebelz' security workers, DJs and others; (3) an
> "Expense" fee for items such as Rebelz' advertising
> expenses; (4) a "Late Fee" for any time in which a
> Dancer was even the slightest bit late for her shift; (5) a
> fee for dancing less than 80 paid minutes any night; and
> (6) a fee for earning more than $300 in a night.[13]

Rebelz imposed these fees without input from the dancers; as such, any change in

the amount deducted on a given night was determined exclusively by Rebelz.[14]

Responding to the declarations by Harris, Zimmerman, and Baker, the

Defendants filed a declaration by Mrs. Varando.[15] In her declaration, Mrs. Varando

challenges certain representations made by Harris, Zimmerman, and Baker,

asserting that "different dancers pay different expenses, and the manner by which

expenses are charged varies."[16] For example, Mrs. Varando asserts that Rebelz has

---

[12] *Id.*

[13] Doc. 7-4, Ex. 1 (Jan. 21, 2022 B. Harris Decl.) ¶ 9; *see also* Doc. 7-5, Ex. 2 (Jan. 27, 2022 C. Zimmerman Decl.) ¶ 8 (same); Doc. 7-6, Ex. 3 (Feb. 4, 2022 V. Baker Decl.) ¶ 8 (same).

[14] *Id.*

[15] Doc. 19-1, Ex. 1 (Mar. 17, 2022 H. Varando Decl.).

[16] *Id.* ¶ 6.

a different compensation structure for dancers who perform private dances for more than eighty minutes in a given shift, and that some dancers "choose to purchase drinks throughout their shifts on a credit system," with the costs of those drinks "deducted from their compensation at the end of the night."[17] Further, Mrs. Varando disputes the existence of fees for advertising expenses, dancing less than 80 paid minutes a night, and earning more than $300 a night.[18] According to Mrs. Varando, "[t]hose claims are flatly wrong."[19] Notably, although Mrs. Varando denies Harris's allegation that dancers receive less than 50% of dance fees (due to fees Rebelz imposed for certain house expenses),[20] she acknowledges that Rebelz charges at least certain dancers "house fee[s]," "expenses," and "other fees."[21]

With the filing of Harris's reply brief in support of her motion for conditional certification, the motion has been fully briefed.[22] Accordingly, the motion is ripe for disposition.[23]

---

[17] *Id.*

[18] *Id.* ¶ 7.

[19] *Id.*

[20] *Id.* ¶ 4.

[21] *Id.* ¶¶ 6, 8–9.

[22] *See* Doc. 8; Doc. 19; Doc. 20.

[23] In her Complaint, Harris presents two distinct class definitions: the first class concerns only Count I (FLSA); the second class concerns only Counts II and III (WPCL and conversion, respectively). Doc. 1 ¶¶ 10–11. Although the class definitions are virtually identical and, for all practical purposes, indistinguishable, *compare id.* ¶ 10 (the "FLSA Class": "All current or former dancers employed by Rebelz Club, LLC, d/b/a Rebelz Gentlemen's Club in the United States during the last three years"), *with id.* ¶ 11 (the "Pennsylvania Class": "All current or former dancers employed by Rebelz Club, LLC, d/b/a Rebelz Gentlemen's Club in Pennsylvania during the last three years"), at this juncture, Harris seeks only the conditional certification of the first class (i.e., the FLSA Class). Doc. 8 at 2–4.

## II.   LAW

Section 16(b) of the FLSA permits employees to bring a private right of action for violations of the statute "[o]n behalf of . . . themselves and other employees similarly situated."[24] To maintain a collective action under the FLSA, however, a plaintiff must satisfy two requirements. First, the plaintiff must establish that the collective action group is "similarly situated."[25] Second, "similarly situated" group members must affirmatively opt into the suit through filing a written notice of consent with the court.[26] It is this latter requirement of voluntary entry that clearly distinguishes the FLSA conditional certification process from the traditional class certification framework of Federal Rule of Civil Procedure 23.[27]

While not defined in Section 16(b) of the FLSA, district courts within the United States Court of Appeals for the Third Circuit have developed a two-step procedure to determine whether potential members of the alleged collective group are "similarly situated."[28] These steps proceed as follows:

> First, the court must decide whether a class should be certified conditionally in order to give notice to the potential class members and to allow for pretrial discovery regarding the individual claims. After the class has been conditionally certified, notice and opportunity

---

[24]   29 U.S.C. § 216(b).

[25]   *Stone v. Troy Construction, LLC*, 2015 WL 7736827, at *2 (M.D. Pa. Dec. 1, 2015) (Munley, J.).

[26]   *Id*.

[27]   *Craig v. Rite Aid Corp.*, 2009 WL 4723286, at *2 (M.D. Pa. Dec. 9, 2009) (Jones, J.).

[28]   *Id*.

> to opt in has been given to the potential plaintiffs, and
> discovery has been conducted, the court may then be
> asked to reconsider the conditional class certification to
> determine whether the "similarly situated" standard has
> been met.[29]

A court is confronted with the second step above in a motion for decertification following the completion of discovery. Aided by the benefit of a complete factual record, this step at an advanced stage of litigation entails a higher burden of proof than the initial, conditional certification.[30]

At an early stage of litigation, however, a court is concerned with the first step of the "similarly situated" analysis—whether a class should be certified conditionally to give notice to the potential class members and allow for pretrial discovery regarding the individual claims. Unlike with the later inquiry, a plaintiff's burden for conditional certification is "relatively light" and requires only a "modest factual showing."[31] To satisfy this "extremely lenient standard,"[32] a plaintiff need only produce "some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees."[33]

---

[29] *Id.* (internal quotation marks and citations omitted).

[30] *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 534 (3d Cir. 2012).

[31] *Craig*, 2009 WL 4723286 at *2.

[32] *Chung v. Wyndham Vacation Resorts, Inc.*, 2014 WL 4437638, at *2 (M.D. Pa. Sept. 9, 2014) (Mariani, J.).

[33] *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013).

As a result of the modest burden at this stage of proceedings, motions for conditional certification are generally successful.[34] This light burden and the ensuing high rate of success at the conditional certification stage result because the district court bears an insignificant risk of error by granting the motion. My former colleague, the Honorable John E. Jones III, writing for this Court, aptly described the justification for this modest burden as follows:

> The burden in this preliminary certification is light because the risk of error is insignificant: should further discovery reveal that the named positions, or corresponding claims, are not substantially similar[,] the defendants will challenge the certification and the court will have the opportunity to deny final certification.[35]

Furthermore, the Third Circuit has explained that conditional certification of an FLSA collective action claim is not really a certification at all, but rather an exercise of the district court's discretionary power to facilitate the sending of notice to potential class members.[36]

## III.   ANALYSIS

### A.   Conditional Certification

In her Complaint, Harris alleges that she and the other Rebelz dancers were subject to a common illegal pay practice: the Defendants "illegally diverted [the]

---

[34] *Craig*, 2009 WL 4723286 at *2 (citing *Woodard v. FedEx Freight East, Inc.*, 250 F.R.D. 178, 191 (M.D. Pa. 2008) (Vanaskie, J.)).

[35] *Id.*

[36] *Halle v. West Penn Allegheny Health System Inc.*, 842 F.3d 215, 224 (3d Cir. 2016).

Dancers' tips by converting the tips to [the] Defendants' benefit."[37] According to Harris, the declarations submitted by Zimmerman and Baker (coupled with Harris's own declaration) "confirm the allegations of the Complaint that [the] Defendants' scheme to illegally divert a portion of their tips in violation of [the FLSA] was a policy universally applied to all Dancers."[38] And by presenting "threshold evidence" that the putative class members were "uniformly subject to a policy that violates the FLSA," Harris argues, she has established that "the putative class members are 'similarly situated,'" and therefore conditional certification is appropriate.[39] The Court agrees.

The Defendants present several arguments in response, none of which have merit. First, the Defendants argue that the Rebelz dancers are not subject to the same compensation policies, citing the declaration by Mrs. Varando that contests certain representations contained in Harris's declaration.[40] Specifically, in her declaration, Mrs. Varando asserts (a) there are no advertising expenses for dances, fees for dancing less than 80 paid minutes per night, or fees for earning more than $300 in a night; and (b) the house fees do not apply uniformly to all dancers.[41] But these attempts to disprove the testimony in Harris's declaration (as well as in the declarations submitted by Zimmerman and Baker) are premature: "the Court

---

[37]  Doc. 8 at 4–5.
[38]  *Id*. at 6.
[39]  *Id*. at 13.
[40]  Doc. 19 at 5–7.
[41]  Doc. 19-1, Ex. 1 (Mar. 17, 2022 H. Varando Decl.) ¶¶ 6–7.

should not evaluate the merits of the case, consider the weight of the evidence, or resolve factual disputes until final certification."[42] As discussed, for conditional certification, a plaintiff need only present "some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees."[43] Competing affidavits disputing "the factual basis of a plaintiff's allegations address the merits of the plaintiff's claims, not the commonality of the alleged policies," and are therefore not relevant at this stage.[44]

Second, the Defendants assert that Harris's evidence supporting conditional certification "is wildly insufficient to support the serious relief asserted."[45] Specifically, the Defendants argue that the declarations Harris presents are "virtually identical," "clearly prepared by counsel," and "based on the same template."[46] Although the Defendants' characterization of the declarations is accurate—they are, indeed, virtually identical—that is of no consequence. Courts

---

[42] *Fischer v. Federal Express Corp.*, 509 F. Supp. 3d 275, 284 (E.D. Pa. 2020); *see also Viscomi v. Clubhouse Diner*, 2016 WL 1255713, at *5 (E.D. Pa. Mar. 31, 2016) ("To the extent that defendants invite the Court to evaluate the credibility of the affiants or the merits of their claims, it is more properly considered at the second stage of the certification inquiry or on a motion for summary judgment.") (internal quotation marks, brackets, and citation omitted).

[43] *See Symczyk*, 656 F.3d at 192.

[44] *Fischer*, 509 F. Supp. 3d at 284 (internal quotation marks and citation omitted).

[45] Doc. 19 at 7.

[46] *Id*. at 8.

routinely accept such "boilerplate" and "form" declarations as sufficient "to make the modest factual showing necessary for conditional certification."[47]

Third, the Defendants argue that the Court should only approve a two-year limitations period because Harris "has presented no evidence to establish willfulness."[48] But the Court agrees with Harris that the question of willfulness, which affects the applicability of a three-year limitations period, is a "merits issue reserved for disposition at final certification or summary judgment."[49]

At this early stage, the declarations submitted by Harris, Zimmerman, and Baker satisfy the "modest factual showing necessary to warrant conditionally certifying their action"[50]—that is, they show that all dancers who worked for

---

[47]  *Gallagher v. Lackawanna County*, 2008 WL 9375549, at *8 n.7 (M.D. Pa. May 30, 2008) (Vanaskie, J.) (granting plaintiffs' motion for conditional certification over the defendants' objections that the supporting employee declarations—allegedly "'form' declarations [that] 'merely parrot the conclusory allegations contained in [p]laintiffs' Complaint'"); *see also Chung*, 2014 WL 4437638 at *2–3 (granting conditional certification based on "Plaintiffs' consistent and adequately detailed declarations," even though "the sworn statements contain considerably similar language and allegations"); *Tompkins v. Farmers Insurance Exchange*, 2015 WL 4931605, at *4 (E.D. Pa. Aug. 18, 2015) ("Although Defendant correctly points out that Plaintiffs' declarations are 'terse' and 'cookie-cutter' in nature, the declarations, boilerplate-like as they are, are sufficient to show—at this stage—that all seven named Plaintiffs and their fellow APD Claims Representatives, regardless of the state in which they worked, were affected in similar ways by Defendant's alleged policy or practice of requiring pre-shift work without compensation.") (internal quotation marks and citation omitted).

[48]  Doc. 19 at 9.

[49]  Doc. 20 at 5; *see also Wilson v. Wings Over Happy Valley MDF, LLC*, 2020 WL 869889, at *8 (M.D. Pa. Feb. 21, 2020) (Kane, J.) ("Defendants object to the application of a three-year statute of limitations in this case because [Plaintiffs] have not actually pled the existence of willful violations. However, this Court has determined that the willfulness of an FLSA violation is an issue going to the merits of the case and not whether notice should be issued to potential claimants.") (internal quotation marks and citations omitted); *Arroyo v. Aspen Construction Services, Inc.*, 2020 WL 4382009, at *4 (E.D. Pa. July 31, 2020) ("[I]t is premature for the Court to decide whether Defendants' alleged violations of the FLSA were willful before the parties have engaged in full discovery.").

[50]  *Gallagher*, 2008 WL 9375549 at *8.

Rebelz within the putative class period were subject to the same compensation structure, whereby Rebelz withheld portions of the dancers' tips and dance fees to finance other house expenses. Accordingly, Harris's motion for conditional certification is granted.

## B.    Notice

Harris asks the Court to authorize notice through "first-class mail, text message, and email," and to provide a "sixty (60) day notice period, with a thirty (30) day reminder notice to those who have not responded."[51] The Court considers this notice request reasonable and consistent with prior rulings from district courts in this Circuit.[52]

In response, the Defendants argue only that the proposed notice "should include a provision notifying the opt-ins that they may be liable for the costs of suit if [the] Defendants prevail."[53] According to the Defendants, this provision is "reasonable" and "has been adopted before,"[54] citing a ruling from Magistrate

---

[51]   Doc. 8 at 21.

[52]   *See, e.g.*, *Belt v. P.F. Chang's China Bistro*, 2020 WL 3829026, at *9 (E.D. Pa. July 8, 2020) ("[I]t is appropriate in the modern digital age to distribute notice by mail, email, and text, because although people frequently move and change addresses, they typically retain the same email addresses and phone numbers."); *Garcia v. Vertical Screen, Inc.*, 387 F. Supp. 3d 598, 608 (E.D. Pa. 2019) ("Courts in this Circuit regularly permit follow-up notices and posting of the notice at work sites of the defendant.") (citation omitted); *Sanchez v. Santander Bank, N.A.*, 2019 WL 6050738, at *3–4 (D.N.J. Nov. 15, 2019) (permitting a 60-day notice period and a "reminder notice to be sent by mail and email halfway through the notice period"—i.e., 30 days).

[53]   Doc. 19 at 9.

[54]   *Id.*

Judge Arnold C. Rapoport of the United States District Court for the Eastern District of Pennsylvania in *Wright v. Lehigh Valley Hospital & Health Network*.[55]

Magistrate Judge Rapoport is correct that "courts have awarded costs to prevailing defendants in FLSA cases," and therefore "[a]n award of costs to a prevailing defendant in an FLSA case is clearly possible and is not merely theoretical."[56] That said, the purpose and benefit of such a notice—i.e., "allowing putative plaintiffs to 'make informed decision about whether to participate'"[57]—is substantially outweighed by the risk of intimidating potential class members and chilling participation in the collective action.[58] Accordingly, the Court approves Harris's proposed notice request and denies the Defendants' counter-proposal to include a provision notifying opt-ins that they may be liable for costs.

---

[55] 2011 WL 221770, at *7 (E.D. Pa. Jan. 20, 2011).

[56] *Creten-Miller v. Westlake Hardware, Inc.*, 2009 WL 2058734, at *4 (D. Kan. July 15, 2009) (compiling cases).

[57] *Byard v. Verizon West Virginia, Inc.*, 287 F.R.D. 365, 375 (N.D. W. Va. 2012) (quoting *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

[58] *See Bellan v. Capital BlueCross*, 496 F. Supp. 3d 854, 860 (M.D. Pa. 2020) (Kane, J.) ("[T]he Court finds that requiring additional language regarding opt-in plaintiffs' potential obligations would only serve to have a chilling effect on potential participation and is unwarranted."); *Charles v. Progressions Behavioral Health Services, Inc.*, 2018 WL 4924169, at *5 (E.D. Pa. Oct. 9, 2018) ("[W]e reject Defendants' argument that the notice should include a warning that opt-in plaintiffs may be ultimately liable for Defendants' costs, as such a warning is unnecessarily intimidating and may chill otherwise valid participation in the collective."); *Guzman v. VLM*, 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007) (rejecting defendants' proposed notice provision that plaintiffs "will be responsible for costs" because the "possibility that such costs for absent class members would be other than de minimis" is "remote," and the notice "may have an in terrorem effect that is disproportionate to the actual likelihood that costs . . . will occur in any significant degree").

## IV.    CONCLUSION

The factual showing required for conditional certification of a proposed class is indisputably modest. Because the declarations Harris presents satisfy this modest requirement, her motion for conditional certification is granted. Additionally, the Court authorizes the use of Harris's proposed notice as written.[59]

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[59]    Doc. 7-7, Ex. 4 (Draft Notice of Collective Action Lawsuit).